UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTRY VISIONS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MIDSOUTH LLC,<br><br><br>　　　　Defendant. | No. 2:15-cv-01740-TLN-CKD<br><br><br>**ORDER DENYING IN PART AND GRANTING IN PART COUNTER-DEFENDANTS' MOTION TO DISMISS** |
| MIDSOUTH LLC,<br><br>　　　　Counter Claimant,<br><br>　　v.<br><br>COUNTRY VISIONS, INC.; and KENNETH PETERSON, CEO, Country Visions, Inc.,<br><br>　　　　Counter Defendants. | |

　　　　This matter is before the Court pursuant to Country Visions, Inc. ("CVI") and Kenneth Petersen's[1] (collectively, "Counter-Defendants") motion seeking dismissal of certain counterclaims alleged by Defendant MidSouth LLC ("MidSouth"), under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Counter-Defs.' Mot. to Dismiss Countercl. Pursuant to FRCP 12(b)(6) 2:2–4, ECF No. 19-1.) Plaintiff argues these counterclaims should be dismissed without leave to amend. (Id. at 4:4–5.) For the reasons stated below, Counter-Defendants' motion is denied in part, and granted in part.

---

[1]　　MidSouth incorrectly names Petersen as "Peterson."

1

## I. FACTUAL ALLEGATIONS

The following factual allegations in the Counterclaim concern the motion: "MidSouth is a limited liability company," comprised of members Rod Dixon (Illinois citizen); Renee Dixon (Illinois citizen); and CC Young & Associates, LLC ("Young"), whose members are Craig and Cathy Young (Texas citizens). (Countercl., ECF No. 10 at ¶ 1.)

Before "2014[,] [CVI] was unable to provide a functioning website for its Apricot Lane franchisees to sell products in connection with the operation of their businesses." (ECF No. 10 at ¶ 7.) "As a result, both [Third Party Plaintiff North Beach, Inc. ("North Beach"), a CVI franchisee associated with Rod and Renee Dixon,] and Young created individual e-commerce websites for their respective businesses . . . ." (ECF No. 10 at ¶ 7.) CVI "attempted to launch and operate a website, but it was ultimately unsuccessful." (ECF No. 10 at ¶ 8.)

Thereafter, CVI "approached both North Beach and Young to propose that they operate an Apricot Lane website that would sell product for all franchisees in the system." (ECF No. 10 at ¶ 9.) "In an email dated August 28, 2013, [CVI], through its President, . . . Peters[e]n, sent to Rod Dixon and Craig Young a spreadsheet, which it called the 'E-Commerce Model.'" (ECF No. 10 at ¶ 11.) "The E-Commerce Model was in the form of a pro forma profit and loss statement that was intended to demonstrate the revenues and profits that Young and North Beach would make if they operated [CVI]'[s] website." (ECF No. 10 at ¶ 12.)

"Craig Young and Rod Dixon created MidSouth on or around February 5, 2014 . . . ." (ECF No. 10 at ¶ 14.) CVI "and MidSouth . . . entered into an agreement on February 6, 2014" (the "Agreement"). (ECF No. 10 at ¶ 15.)

"Since beginning its operations, MidSouth has discovered that the business model of the E-Commerce site is untenable. MidSouth lost money each month that it operated under the . . . Agreement . . . ." (ECF No. 10 at ¶ 20.) On May 20, 2015, "MidSouth sent a letter . . . rescinding the . . . Agreement." (ECF No. 10 at ¶ 23.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Caviness v. Horizon Cmty.</u>

Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the . . . court to draw on its judicial experience and common sense." Id. at 679.

> "For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).

> [Further,] the court need not accept as true conclusory allegations, nor make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds.

In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1057 (9th Cir. 2008) (citation omitted).

A party asserting claims for fraud must also meet the heightened pleadings standard set forth in Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

**III.   ANALYSIS**

A.   Applicable Law

The parties dispute whether Illinois or California law controls MidSouth's fraud and negligent misrepresentation claims. The Agreement contains a choice-of-law clause stating:

> Governing Law. This Agreement will be governed and construed in all respects in accordance with the laws of the State of California without giving effect to principles of conflict of laws. Both parties agree to submit to exclusive jurisdiction in California and further agree that any cause of action arising under this Agreement shall be brought in an appropriate federal or state court located in California.

(Ex. A ¶ 12.1, ECF No. 1.)[2]  CVI argues "the narrow choice-of-law provision does not encompass

---

[2] Plaintiff CVI attached the Agreement to its Complaint. (ECF No. 1.) The Agreement is properly considered

3

1  MidSouth's tort claims." (Counter-Defs.' Mem. ISO Mot. to Dismiss Countercl., ECF No. 19-2
2  at 7:7–8.) It explains:

> MidSouth's fraud claims are premised entirely on its assertion that . . . Petersen induced MidSouth's principals to create MidSouth by misrepresenting the amount of purchases the website would generate after it was developed. These alleged representations were made **six months before** the Agreement was even executed. Further, far from relying on the Agreement, MidSouth apparently seeks to nullify it.

(ECF No. 19-2 at 6:24, 7:1–4.) Counter-Defendants apply the analysis set forth in <u>Washington Mutual Bank, FA v. Superior Court</u>, 24 Cal. 4th 906 (2001). (Mot. 7–10.) This analysis set forth in <u>Washington Mutual Bank, FA</u> applies "when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California." <u>Id.</u>, at 915.  In opposition, MidSouth argues that California law governs its fraud and negligent misrepresentation claims. (Counter-Claimant's Mem. of Law in Opp'n to Mot., ECF No. 26 at 3:26–28.) For the reasons stated below, the Court finds that California law applies.

"Federal courts sitting in diversity must apply the forum state's"—here, California's— "choice of law rules to determine the controlling substantive law." <u>Fields v. Legacy Health Sys.</u>, 413 F.3d 943, 950 (9th Cir. 2005) (citation and internal quotation marks omitted).  The Ninth Circuit has held:

> California's choice of law framework is set forth in Restatement § 187(2) and in <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459 (1992). "California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws (['¨]187(2)[']) dictates a different result." <u>Hoffman v. Citibank (S.D.), N.A.</u>, 546 F.3d 1078, 1082 (9th Cir. 2008) (citation omitted).

<u>Ruiz v. Affinity Logistics Corp.</u>, 667 F.3d 1318, 1323 (9th Cir. 2012).

Moreover, "the contract containing the choice-of-law provision must govern the claim that is alleged to arise from it." <u>Wehlage v. EmpRes Healthcare Inc.</u>, 821 F. Supp. 2d 1122, 1127 (N.D. Cal. 2011) (citing <u>Nedlloyd</u>, 3 Cal. 4th at 469).  Under California's choice-of-law

---

since "[a] court may . . . consider certain materials—[including] documents attached to the complaint . . .—without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

framework, "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." Nedlloyd, 3 Cal. 4th at 470.

Nedlloyd involved the following choice-of-law provision in a shareholder's agreement: "This agreement shall be governed by and construed in accordance with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts." Id. at 463. The Nedlloyd plaintiff argued this choice-of-law provision did not govern its fiduciary duty cause of action since the cause of action was independent of the shareholders' agreement and outside the choice-of-law provision's intended scope. Id. at 468. The California Supreme Court rejected this argument, explaining that "[w]hen two sophisticated, commercial entities agree to a choice-of-law clause . . ., the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." Id. The court further explained: "Nedlloyd's fiduciary duties, if any, arise from—and can exist only because of—the shareholders' agreement pursuant to which [plaintiff]'s stock was purchased by Nedlloyd." Id. at 469; see also Cal-State Bus. Prods. & Servs., Inc. v. Ricoh, 12 Cal. App. 4th 1666, 1677 (1993), as modified (Feb. 4, 1993) ("The entire gist of the complaint in the present action relates to allegedly false promises made in the course of the negotiations (that culminated in contracts with integration clauses) and the subsequent conduct of the relationship between the parties created by the contracts. All the causes of action are consequently within the scope of the forum-selection clauses." (footnotes omitted)).

Here, even if the alleged misrepresentations were made before the Agreement was a live document, MidSouth's counterclaims arose during the course of its commercial relationship with CVI when those representations, allegedly, were not satisfied. See Dos Beaches, LLC v. Mail Boxes Etc., Inc., No. 09CV2401-LAB RBB, 2012 WL 506072, at *19 (S.D. Cal. Feb. 15, 2012) (finding that a plaintiff's claim challenging defendants' conduct that led plaintiff to execute a Franchise Agreement falls within the scope of the choice-of-law provision in the Franchise Agreement). Therefore, MidSouth's counterclaims fall within the Agreement's choice-of-law

1    provision.  Thus, the Court turns to the enforceability of the choice of law provision.

2    "As a threshold matter, a court must determine 'whether the chosen state has a substantial

3    relationship to the parties or their transaction, or . . . whether there is any other reasonable basis

4    for the parties' choice of law.'"  Ruiz, 667 F.3d at 1323 (quoting Nedlloyd, 3 Cal. 4th at 466).  "A

5    substantial relationship exists where one of the parties is domiciled or incorporated in the chosen

6    state."  ABF Capital Corp., a Del. Corp. v. Osley, 414 F.3d 1061, 1065 (9th Cir. 2005) (quoting

7    Nedlloyd, 3 Cal. 4th at 467).  MidSouth alleges in its Counterclaim that CVI "is a corporation

8    organized and existing under the laws of the State of California, with its principal place of

9    business in Vacaville, California."  (ECF No. 10 at ¶ 2.)  It further alleges that "Peters[e]n is the

10   CEO of [CVI] and, on information and belief, is a citizen and resident of California."  (ECF No.

11   10 at ¶ 3.)  Therefore, a substantial relationship exists between the parties and the state of

12   California.

13   "[T]he court must next determine whether the chosen state's law is contrary to a

14   **fundamental** policy of California."  Nedlloyd, 3 Cal. 4th at 466 (footnote omitted).  Clearly

15   applying California law would not be contrary to a fundamental policy of California.  Therefore,

16   California law applies.

17         B.     Fraud and Negligent Misrepresentation Claims

18   Counter-Defendants have mostly briefed their motion for dismissal on MidSouth's fraud

19   and negligent misrepresentation claims using Illinois law.[3]  However, the portion of their motion

20   that sets forth California law is discussed below.[4]

21         Counter-Defendants argue in pertinent part that the alleged false written

---

[3]   Counter-Defendants brief California law in their reply brief.  However, "[t]he district court need not consider arguments raised for the first time in a reply brief."  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).
[4]   Counter-Defendants also argue: "it is doubtful that MidSouth has standing to raise these claims.  As the Counterclaim acknowledges, MidSouth was not formed until February 5, 2014, which is about 6 months **after** the alleged misrepresentations were made.  A party that did not exist could not have been the recipient of any allegedly false statements." (ECF No. 19 n.6.)
  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (alteration in original) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)).  MidSouth alleges Counter-Defendants "made false written representations to MidSouth, as explained herein and in the form of the E-Commerce Model spreadsheet." (ECF No. 10 at ¶ 38; id. ¶ 44.)  Thus, MidSouth alleges it received the allegedly false statements, and therefore, it does not lack standing on this ground at the pleading stage.

representation—"in the form of the E-Commerce Model spreadsheet" (ECF No. 10 at ¶¶ 38, 44)—is a non-actionable statement of opinion under California law. (ECF No. 19 n.7.) The parties agree that "speculative statements about possible profits are non-actionable opinions ('puffing') and a party is not entitled to rely upon them." Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999). (ECF No. 19 12 n.7; Opp'n, ECF No. 26 at 16–17.) The parties further agree that California recognizes an exception to this general rule, "in that misrepresentations of opinion may be 'actionable when the declarant holds himself out to be specially qualified.'" (ECF No. 19 at 8:14–15 (quoting Harazim v. Lynam, 267 Cal. App. 2d 127, 131 (1968)); ECF No. 26 at 7:16–18.) However, Counter-Defendants argue that: "MidSouth has not attempted . . . to fall within this exception given its assertions about CVI's prior inability to operate a website . . . ." (ECF No. 19 at 8:17–19.) In their reply, Counter-Defendants reiterate that MidSouth fails to "allege[] that CVI had, or held itself out as having, special knowledge or expertise regarding online sales." (Reply, ECF No. 27 at 3:22–24.)

MidSouth opposes, arguing:

> CVI, as franchisor, had knowledge of all of the franchisees in the Apricot Lane system and that CVI had attempted the operation of a website, whereas the Franchisees had no knowledge of other franchisees or of a national website. Thus, the counterclaim alleges that CVI and Peterson had **specialized knowledge** of the CVI system and other franchisees, and were in a position to know and make representations about the revenues that a website would generate—whereas the Franchisees were not.

(ECF No. 26 at 8:13–19 (emphasis added).) MidSouth further asserts that given this specialized knowledge, Counter-Defendants' statements about anticipated sales are actionable under the exception to the general rule. (ECF No. 26 at 8:22–25.)

Misrepresentations of opinion are actionable

> when one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject-matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such knowledge or information, though it might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false.

7

1   Haserot v. Keller, 67 Cal. App. 659, 670–71 (1924); see also Cal. Pub. Emps.' Ret. Sys. v.
2   Moody's Inv'rs Serv., Inc., 226 Cal. App. 4th 643, 662 (2014), review denied (Sept. 10, 2014)
3   (discussing the exception in a negligent misrepresentation action).
4          Here, MidSouth alleges in its Counterclaim that franchisor CVI "had knowledge of all of
5   the franchisees, and had attempted operation of a website.  Young and North Beach had no
6   knowledge of other franchisees, or of a national website."  (ECF No. 10 at ¶ 12.)  MidSouth
7   further alleges CVI acted through its President, Petersen.  (ECF No. 10 at. ¶ 11.)  Thus, MidSouth
8   alleges CVI had specialized knowledge concerning CVI's franchisees, and, correspondingly, sales
9   revenue generated by those franchisees, (see ECF No. 10 at ¶ 12), while CVI did not have
10  specialized knowledge concerning a website's successful operation.  (see ECF No. 10 at ¶¶ 8–9)
11  Given these allegations, the Court finds that Counter-Defendants have not shown the exception's
12  inapplicability under California law, and therefore, their motion to dismiss MidSouth's fraud and
13  negligent misrepresentation claims is denied.
14          C.      Fraud Claim Pursuant to the Illinois Franchise Disclosure Act
15          Counter-Defendants briefed their motion for dismissal of MidSouth's Illinois Franchise
16  Act claim using Illinois law and MidSouth followed suit.  The parties, however, have not
17  explained how MidSouth can maintain such a claim in light of the Agreement's choice-of-law
18  provision.  Accordingly, this portion of the motion is denied.
19          D.      Unjust Enrichment
20          Counter-Defendants seek dismissal of MidSouth's unjust enrichment claim, arguing that
21  "under California law, a cause of action for unjust enrichment is not cognizable."  (ECF No. 19 at
22  17:21–22 (quoting In re ConAgra Foods Inc., 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012)).
23  MidSouth responds that "CVI's argument . . . fails to recognize that there is a split of authority in
24  California law as to whether unjust enrichment is a separate cause of action."  (ECF No. 26 at
25  13:3–5.)
26          The Ninth Circuit has held:
27          [I]n California, there is not a standalone cause of action for "unjust
            enrichment," which is synonymous with "restitution."  Durell v.
28          Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (2010); Jogani v.

Superior Court, 165 Cal. App. 4th 901, 911 (2008).  However, unjust enrichment and restitution are not irrelevant in California law.  Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." 55 Cal. Jur. 3d Restitution § 2.

Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015).  "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"  Id. (quoting Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221, 231 (2014)).  The Ninth Circuit in Astiana held that the plaintiff "state[d] a quasi-contract cause of action" since she alleged defendant "had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result." Id. (second alteration in original).

MidSouth alleges it is entitled to relief since Counter-Defendants induced MidSouth to sign the Agreement through a false written representation—"in the form of the E-Commerce Model spreadsheet" (ECF No. 10 at ¶ 38)—and "they each have been unfairly and unjustly enriched" as a result.  (ECF No. 10 at ¶ 49.)  The Court finds that these allegations usher this cause of action under the quasi-contract umbrella and therefore, the captioned "unjust enrichment" cause of action is construed as a quasi-contract claim seeking restitution.  Accordingly, Counter-Defendants' motion to dismiss on grounds there is no independent claim for unjust enrichment in California is denied.

E.   Unfair Competition Law: Unfair Business Practices Claim

Counter-Defendants seek dismissal of MidSouth's unfair business practices claim under California Business and Professions Code section 17200, arguing this code section "does not apply to this dispute because MidSouth is not a California resident." (ECF No. 19 at 18:13.)  However, Counter-Defendants, have not explained how the choice-of-law provision, which specifies California law, precludes this claim.  Therefore, this portion of their motion is denied.

Counter-Defendants next argue, *inter alia*, "MidSouth is not entitled to the [injunctive] relief it seeks in its Counterclaim," (ECF No. 19 at 18:25), since it has not alleged "threatened future harm or [a] continuing violation."  (ECF No. 19 at 19:7.)  They explain that the:

> activities [upon which MidSouth bases its Counterclaim] necessarily ended by February 6, 2014, which is when the parties' signed the Agreement. Further, MidSouth admits in its Answer that it terminated the Agreement in May of 2015[, which is] months before this action was commenced. Because there is no allegation that the conduct it complains of is continuing, there is no basis for the issuance of an injunction.

(ECF No. 19 at 19:6–19 (citation omitted).)

MidSouth asserts that it has alleged a basis for injunctive relief and points to the following allegations: "MidSouth has been damaged and will continue to be damaged." (ECF No. 26 at 13:28–14:2; ECF No. 10 at ¶ 54.)

"Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a **real or immediate threat** of an irreparable injury." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004); see also People v. Toomey, 157 Cal. App. 3d 1, 20 (1984) (holding that "a showing of threatened future harm or continuing violation is required" before a court can impose an injunction under California's Business and Professions Code). MidSouth's conclusory assertion that it "will continue to be damaged," (ECF no. 10 ¶ 54), "fails to [sufficiently] allege that it has suffered any ongoing injury from [Counter-Defendant]s' anticompetitive conduct." In re Napster, Inc. Copyright Litig., 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) ("[T]he court holds that [the counter-claimant] has failed to allege any set of facts that would entitle it to . . . injunctive relief under California Business and Professions Code sections 17200 and 17203."). Therefore, Counter-Defendants' motion to dismiss MidSouth's unfair business practices claim seeking injunctive relief is granted.

**IV.    CONCLUSION**

For the stated reasons, Counter-Defendants' motion is GRANTED IN PART and DENIED IN PART:

(1) CVI's motion to dismiss MidSouth's fraud and negligent misrepresentation claims is DENIED;

(2) CVI's motion to dismiss MidSouth's unjust enrichment claim is DENIED; and

(3) CVI's motion to dismiss MidSouth's injunctive relief claims is GRANTED.

1  MidSouth has thirty (30) days from the date on which this Order is filed to file an amended
2  complaint addressing the referenced deficiency in the dismissed claim.
3      IT IS SO ORDERED.
4  Dated: April 21, 2016

                             Troy L. Nunley
                             United States District Judge